Argued and submitted September 18, 1985, affirmed as to compensability, reversed as to termination of temporary total disability June 4, 1986

In the Matter of the Compensation of
Kiyoko R. Eastman, Claimant.

EASTMAN,
*Petitioner,*

*v.*

GEORGIA PACIFIC CORPORATION,
*Respondent.*

(WCB 83-03678; CA A33954)

719 P2d 1310

James L. Edmunson, Eugene, argued the cause for petitioner. With him on the brief were Christopher D. Moore and Malagon & Associates, Eugene.

John M. Pitcher, Portland, argued the cause for respondent. With him on the brief was Roberts, Reinisch & Klor, P.C., Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Claimant seeks review of a Workers' Compensation Board order reversing the referee and holding that claimant's shoulder and neck condition is not compensable and that employer was entitled to terminate temporary total disability payments for a compensable carpal tunnel syndrome.

Claimant, a 21-year-old millworker, suffered a compensable injury necessitating carpal tunnel surgery on both wrists, which was performed in late 1982 by Dr. Jewell. In February, 1983, claimant saw her family physician, Dr. Wichser, for shoulder and neck pain; he prescribed therapy and medication. Claimant sought compensation for that treatment, on the assumption that her shoulder and neck pain was secondary to the carpal tunnel syndrome. SAIF denied the claim. On *de novo* review, we agree with SAIF that the evidence is not sufficient to show that claimant's present disability is work related.

Claimant also contends that employer had no authority to terminate unilaterally the temporary total disability benefits that she had been receiving as a result of her compensable carpal tunnel syndrome. In a form letter, employer sought Jewell's release of claimant for jobs that it characterized as light duty. On April 4, 1983, Jewell released claimant to light duty, with no repetitive hand motions. Claimant did not report for work, because, in her opinion, as she later testified at hearing, "there is no light duty work there." On April 6, 1983, employer wrote a letter to claimant advising:

> "We do have light duty work available and since your physician has released you to light duty work, compensation benefits will cease as of April 4, 1983."

Claimant did not respond, and benefits were terminated as of April 4, 1983.

*Former* OAR 436-54-222(6), authorizing the termination of temporary total disability benefits before claim closure, provided:[1]

> "An insurer or self-insured employer shall cease paying temporary total disability compensation and start making

---

[1] OAR 436-54-222 was renumbered to OAR 436-60-030 on May 1, 1985, and amended on December 12, 1985; it remains the same in substance.

payment of such temporary partial disability compensation as would be due in subsection (1) when an injured worker refuses wage earning employment prior to claim determination under the following conditions:

"(a)  The attending physician has been provided with a written description of the job duties and the physical requirements thereof;

"(b)  The attending physician agrees that the injured worker is capable of performing the employment offered as it is described; and

"(c)  The employer has provided the injured worker with a written offer of reasonable employment which states the beginning time, date and place; the duration of the job; the wage rate payable; an accurate description of the job duties and that the attending physician has said the worker is capable of performing the employment."

Employer attempts to justify its termination of claimant's benefits under that rule, claiming that it substantially complied with the procedural requirements, or, in the alternative, that compliance would have been futile because claimant had already decided not to work. The referee reversed the termination of benefits, finding that employer had not satisfied the procedural requirements of subparagraph (6). The Board reversed. We agree with the referee, because the rule is clear, unambiguous and specific in what is required before an employer may terminate unilaterally temporary total disability payments. Those requirements were not met here. Claimant was never given a written offer of employment that accurately described the jobs available. She was never advised of the beginning time or date or the duration of the job. Having failed to comply with the rule's requirements, employer had no authority to terminate benefits, even if claimant had already decided that she would accept no job which was offered to her.

Affirmed as to compensability; reversed as to termination of temporary total disability.